# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | :    3:17-CR-258 |
| v. | :    (JUDGE MARIANI) |
| | : |
| LARRY GILLIAM, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION
## I. INTRODUCTION

The Government's Motion for Reconsideration (Doc. 106) seeking reconsideration of the Court's determination that Defendant Larry Gilliam's Motion to Suppress Physical Evidence ("Motion") (Doc. 36) was properly granted (Doc. 103) is pending before the Court. The Government asserts that reconsideration is warranted on three bases: 1) the Government provided specific support for its argument that adult individuals living in a house where dangerous drugs were present gives rise to a true emergency; 2) the Court's credibility findings regarding law enforcement witnesses were not supported by the record; and 3) the Court's determination that the affidavit of probable cause to search the residence was misleading is not supported by the record. (Doc. 106 at 2-3.) Having carefully reviewed each claimed basis for reconsideration, the Court concludes that the Government's Motion is properly denied.

## II. BACKGROUND AND PROCEDURAL HISTORY

The August 7, 2020, Memorandum Opinion addressing Defendant Larry Gilliam's Motion to Suppress Physical Evidence ("Motion") (Doc. 36) provides an extensive background of the above-captioned action and proceedings related to Defendant's suppression motion. (*See* Doc. 103 at 4-20.) The Court will not repeat the recitation here but will reference facts contained therein which are relevant to the arguments presented in the Government's pending Motion.

Procedurally, the Government timely filed its Motion for Reconsideration on August 21, 2020. *See* LR 7.10, Local Rules of Court of the Middle District of Pennsylvania. As required, the Motion was accompanied by a supporting brief (Doc. 107). LR 7.10. Defendant filed his opposition brief on August 25, 2020. (Doc. 108.) The Government did not file a reply brief and the time for doing so has passed. Therefore, the pending motion is ripe for disposition.

## III. ANALYSIS

As the Government points out, there is no Federal Rule of Criminal Procedure specifically authorizing motions for reconsideration but "it is settled that 'Motions for reconsideration may be filed in criminal cases.'" (Doc. 197 at 3 n.1 (quoting *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003)).) The Government adds that "[m]uch of the law relied upon by the Court of Appeals and district courts in the Third Circuit deciding these

motions in criminal cases comes from the civil sphere, where they are far more common."

(*Id.*)

In the civil sphere, it is well recognized that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, the party seeking reconsideration must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)).

The Government asserts that it "is compelled to request reconsideration given clear error of law or fact in the Court's Memorandum Opinion that if uncorrected will result in manifest injustice." (Doc. 107 at 4.) As noted above, the Government contends that the Court's Memorandum Opinion contains three errors which require the Court to reconsider its ruling that the evidence seized from Defendant's residence should be suppressed. (Doc. 107 at 4-28.)

## A. Exigency Related to Adult Individuals

The Government first contends that "[c]ontrary to the finding of the Court, the Government provided specific argument, based on evidence in the record to support the

3

proposition that adult individuals living in a house where a dangerous drug may be present gives rise to a 'true emergency' in Fourth Amendment Terms." (Doc. 107 at 4.)

In the Memorandum Opinion, the Court stated the following:

> As an initial matter, the Court notes that the mere presence of a dangerous situation does not give rise to exigent circumstances—exigent circumstances are grounded in the reasonable belief "that someone is in imminent danger," *Couden* [*v. Duffy,* 446 F.3d 483, 496 (3d Cir.2006)], with the common thread of exemplar situations being "the existence of a true emergency," [*United States v. Simmons,* 661 F.3d 151, 157 (2d Cir.2011)]. Second, the Government presents no specific argument, beyond the existence and dangerousness of the drug, regarding the need to protect individuals other than Defendant's children. Because the Government has provided no authority to support the proposition that adult individuals living in a house where a dangerous drug may be present gives rise to a "true emergency" in Fourth Amendment terms, *Simmons*, 661 F.3d at 157, the Court will focus on the arguments regarding Defendant's children.

(Doc. 103 at 28.)

In support of its assertion that the Court erred, the Government states that uncontested testimony and evidence presented at the hearing demonstrated that

> 1) carfentanil can be absorbed through simple skin contact, or if being handled improperly may become airborne; (2) that the search of the residence the next day pursuant to a search warrant was conducted by the Pennsylvania State Police Clan Lab team utilizing full protective gear designed to protect these adult law enforcement officers from exposure; and (3) that after that court-authorized search was complete a notice was posted at the residence that advised the public of the risk of exposure to dangerous substances inside the residence.

(Doc. 107 at 6 (citing Doc. 96 at 20).)

The Court does not dispute that evidence and testimony established the points identified by the Government. However, the key component of finding a warrantless entry

4

justified here is the belief that someone was in "imminent danger," *Couden,* 446 F.3d at 496, "the existence of a true emergency," *Simmons,* 661 F.3d at 157. *See United States v. Mallory,* 765 F.3d 373, 383–84 (3d Cir. 2014). A review of the record shows that the Court properly focused on exigency regarding Defendant's children based on the determination that the Government provided "no authority to support the proposition that adult individuals living in a house where a dangerous drug may be present gives rise to a 'true emergency' in Fourth Amendment terms, *Simmons,* 661 F.3d at 157." (Doc. 103 at 28.)

The Government seeks to undermine this determination by pointing to its reference to *Hill v. Walsh,* 884 F.3d 16 (1st Cir. 2018), in its post-hearing brief. (Doc. 107 at 8.) While the Government now maintains that its citation to *Hill* and other cases "having to do with exigent circumstances to justify entry of residences to secure adults from possible harm" (Doc. 107 at 8) shows that the Court incorrectly determined that it had not provided authority to support exigency related to adults, the Court finds the argument unavailing. The citation to *Hill* is found in a string citation in support of the statement that "[o]ther federal courts have authorized entry for exigent circumstances, applying various factual scenarios confronted by law enforcement." (Doc. 96 at 4-5.) The Government cited *Hill,* 884 F.3d at 23, for the proposition that "entry into residence justified because officers reasonably thought there was emergency based on prior overdoses and appearance of person inside home." (Doc. 96 at 5.) This proposition, if accepted as accurate, is distinct from showing that an

5

adult individual's mere presence in a dwelling where dangerous drugs may be present creates exigent circumstances for Fourth Amendment purposes.

The Government now states that

> *Hill* involved the entry of police into a residence when they believed a 28 year old resident was in danger of overdosing. *Hill*, 884 F.3d at 18. In so finding the *Hill* Court clarified the so-called "emergency aid exception to the warrant requirement" to "mean that officers seeking to justify their warrantless entry need only demonstrate 'an objectively reasonable basis for believing' that 'a person within [the house] is in need of immediate aid.'" *Id.* at 19.

(Doc. 107 at 8.)

*Hill* does not stand for the broad exigent-circumstances proposition suggested by the Government for several reasons. *Hill* is a First Circuit case which was decided on qualified immunity grounds related to the "emergency aid exception" to the warrant requirement where the subject individual had a known history of overdosing and police were serving a warrant to apprehend him issued earlier in the day for the purpose of escorting him to a state court civil-commitment hearing. 884 F.3d at 18-21. Here the Government did not seek to justify the warrantless entry under the emergency aid exception, no evidence suggested that someone in the house had a history of overdosing or was in need of immediate aid, and qualified immunity was not an issue. Thus, the Government has not shown that *Hill* supports the broad proposition asserted or that the Court erred in concluding that the Government provided "no authority to support the proposition that adult individuals living in a house where a dangerous drug may be present gives rise to a 'true emergency' in

6

Fourth Amendment terms, *Simmons*, 661 F.3d at 157." (Doc. 103 at 28.) To accept the Government's argument would be to find that exigent circumstances would exist to enter the suspected dwelling of an individual known to have dealt dangerous drugs any time an officer suspected that an individual could be inside the dwelling. This certainly is not the law, and the Court did not err in focusing on the entering officer's asserted reason for entry, i.e., to locate Defendant's children (*see, e.g.*, Doc. 90 at 137 (Hr'g Tr. 137:13-14)).

## B. Credibility of Law Enforcement Witnesses

The Government next argues that the Court's finding that Officer Palka's and Officer Ferrence's testimony was "less than credible" is "unsupported by the record and contrary to the weight of the evidence offered at the suppression hearing, together with reasonable inferences, deductions, and conclusions to be drawn therefrom." (Doc. 107 at 10-11 (internal quotation and citation omitted).)

> The Government asserts that
>
> [t]he Court's finding that these law enforcement officers were less than credible in their testimony at the hearing where they explained why they conducted a protective sweep and cursory search of Gilliam's residence—due to a concern for the safety of Gilliam's young children and any adults who might be present— has potentially serious ramifications well beyond the suppression of evidence in this single case. Such findings may have lasting negative consequences to the professional law enforcement careers of both officers, who have unblemished professional records and outstanding professional reputations. An officer's credibility, integrity, and honesty are central to his ability to successfully practice as a law enforcement officer.

(Doc. 107 at 12-13.)

The Court is well aware of the importance of its credibility determinations and does not make any adverse finding lightly. However, insofar as the Government may be suggesting that the Court should consider the consequences of an adverse finding beyond the case-related gravity of credibility determinations to be a relevant factor in making a credibility determination, the Court soundly rejects such a proposition. Further, the Court vehemently rejects any suggestion that credibility determinations regarding law enforcement officers should be accorded added significance because "such findings may have lasting negative consequences to the professional law enforcement careers of both officers" (Doc. 107 at 11). Because such a suggestion amounts to according law enforcement officers a conclusive presumption of credibility, the Court finds the suggestion offensive to the principles of justice and fundamental fairness which courts assiduously strive to maintain.

Regarding the Court's credibility determination, the Government also states that

> [t]he record in this case shows that the police were genuinely concerned about the danger presented to anyone in the residence—children or adults—by the presence of carfentanil in the residence. Perhaps the most compelling evidence of this concern came from the testimony of the adult who first confronted the police after they entered the residence—a defense witness at the hearing—who stated that the very first thing police did upon entering the residence was ask, "Where are the children at?"

(Doc. 107 at 12.)

The Court considered this argument and testimony in the August 7, 2020, Memorandum Opinion and found that

> [t]he Government's conclusion that Brown's testimony, if anything, supports the claim that they were legitimately looking for children is diminished when it

8

>is considered that Brown testified that he was asked one question—"where are the kids at?" and he was not asked about children again after he responded that there were no children in the house.

(Doc. 103 at 33-34.) The Government provides no basis for the Court to reconsider its previous assessment of the testimony and reasonable inferences to be drawn therefrom.

Further, contrary to the Government's contention otherwise, the fact that the Court found that *some* of the officers' statements and actions *could* support a belief that the children were in danger (*see* Doc. 107 at 12-13) does not equate with a finding of overall credibility when such statements and actions, viewed in the context of all the evidence, are not indicative of a consistent, well-founded, firmly-held belief that the children were in immediate danger. Thus, the Government has not shown a clear error.

## C. Affidavit of Probable Cause

The Government contends that "[t]he Court's determination that the affidavit of probable cause to search the residence was misleading due to material omissions is not supported by the record." (Doc. 107 at 13.) This assertion goes to only one aspect of the Court's determination that the Government had not shown that it could rely on the good faith exception to avoid suppression of evidence. Thus, the "manifest injustice" claim based on the alleged error must be considered in the broader context of the Court's good faith exception analysis.

Importantly, the Court first found that the Government's conclusory statements made in its pre-hearing brief regarding its entitlement to rely on the good faith exception were

insufficient to carry its burden on the issue. (Doc. 103 at 54-55 (citing Doc. 40 at 30-31).) This is the only time the Government raised the issue. Although Defendant argued in his post-hearing brief that the search and seizure are not justified by the good faith exception (Doc. 97 at 35), the Government did not file a reply brief and, therefore, its sparse treatment of the issue in its opening brief was the sum of its argument that the good faith exception applied in this case.

The Court could have stopped with the conclusion that the Government had not carried its burden on the application of the good faith exception (and could rest on that conclusion now). (Doc. 103 at 55.) However, because of the significance of a decision to suppress evidence, the Court considered the application of the exception to the facts of the case, finding that the conclusion that the Government could not rely on the good faith exception was appropriate when the Court addressed the facts of the case in the relevant legal framework. (*Id.* at 55-58.) Specifically, the Court found that the Magistrate Judge *could* have been misled for a number of reasons. (Doc. 103 at 56-57.) Moreover, the Court found that the Government did not address the heart of the good faith exception, i.e, the "objective reasonableness" of the officers' reliance on the warrant. (Doc. 103 at 57 (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).) The Government does not address this aspect of the Court's good faith analysis which was central to the conclusion that the Government could not rely on the good faith exception to avoid suppression. Thus, the

10

Government again fails to satisfy its burden of showing that reconsideration is warranted on the basis claimed.

While this determination shows that the Government has presented no basis for the Court to reconsider its previous decision, the Court feels compelled to comment on the Government's failure to appreciate the legal framework within which the Court conducted its good faith exception analysis. The Government states that the Court

> appears to conflate the search warrant affidavit of probable cause-- which was for the purpose of searching the residence for drugs and related evidence after some items were observed by police in plain view during the protective sweep—with the earlier protective sweep during which police looked for Gilliam's children. The material omissions cited by the Court that were not included in the affidavit of probable cause—omissions related to conversations about Gilliam's children—were not relevant to a determination of whether there was probable cause that drugs and drug-related evidence would be found at the residence. The affiants needed only to state that they entered the residence based on exigent circumstances and observed in plain view the items that they noted in the affidavit. Yet the Court found that the affiants misled the magistrate by not including conversations about Gilliam's children. And the Court held that due to those material omissions, the good faith exception did not apply in this case.

(Doc. 107 at 13-14.)

The Government's assessment of the Court's analysis misses the mark on several fronts. First, the Court did not hold that the good faith exception did not apply to this case because of material omissions in the search warrant. (See Doc. 103 at 55-58.) As noted above, the Court first found the Government's conclusory argument on the issue did not satisfy its burden of showing its entitlement to rely on the good faith exception. (See id. at 55.) The Court's analysis regarding potentially misleading aspects of the Affidavit of

11

Probable Cause for which Officers Palka and Ferrence were the affiants related primarily to the fact that Palka and Ferrence portrayed the entry into 374 North Main Street as one based on exigent circumstances related to Defendant having told officers that his children were alone on the house and officers believed dangerous drugs to be present there (*see* Doc. 37-1 at 7-8) and the Court's determination that the officers were not credible or objectively reasonable on these points.

> The Court summarized its findings on exigency as follows:
>
> Based on the evidence of record, the Court finds that the officers proceeded without proper justification when they entered 374 North Main Street without a warrant. As to the central question of whether the Government has proven by a preponderance of the evidence that the officers conducted the warrantless search in a manner consistent with the Fourth Amendment, the evidence shows that the officers' alleged assessment that a true emergency existed was neither credible nor objectively reasonable. A reasonable officer considering the facts ascertainable upon a reasonable investigation would not have concluded that warrantless entry was necessary to address a true emergency related to Defendant's children. Because the Government did not show that officers acted on a reasonable belief that Defendant's children were in imminent danger," *Mallory*, 765 F.3d at 383–84, the Government has not established by a preponderance of the evidence that exigent circumstances justified the warrantless search of 374 North Main Street, and, thus, the warrantless entry and search of the residence was not reasonable under the Fourth Amendment.

(Doc. 103 at 42-43.)

Because the Court determined that officers entering 374 North Main Street were not credible in their belief that Defendant's children were in the house and in danger and did not "reasonably believe" that warrantless entry was appropriate, the officers' portrayal in their Affidavit of exigency and observation of contraband in plain view during the "protective

sweep" (Doc. 37-1 at 8) were factors to be considered in the good faith exception analysis under Supreme Court and Third Circuit precedent. (*See, e.g.*, Doc. 103 at 55, 57-58.)

The Government apparently now fails to acknowledge the connection between the credibility and reasonableness of the affiants' assertions regarding exigency in the Affidavit and the ability to rely on the good faith exception, a connection clearly established by the Supreme Court:

> It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.

*Leon*, 468 U.S. at 923 n.24 (citing *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)).

Here the affiants provided the magistrate judge with a bare bones affidavit which presented the circumstances of the entry into 374 North Main Street to have been warranted because "several children were present in the residence with heroin, fentanyl and carfentanil." (Doc. 37-1 at 8.)  Thus, the Court properly determined that

> objective reasonableness of reliance on the warrant is undermined when it is considered that the actions of the affiants, Palka and Ference, are relevant in the good faith exception analysis, *see* [*United States v. Leon*, 468 U.S. 897, 923 n.24 (1984)], and the Court has determined that their pre-warrant actions were not objectively reasonable and their testimony was less than credible. Having found Palka and Ference less than credible in the pre-warrant period, the Court cannot attribute objective reasonableness and good faith to their recitation set out in the Affidavit of Probable Cause. *Leon's* note that nothing in the opinion "suggests . . . that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the

13

> circumstances under which the warrant was obtained to conduct the search," *id.*, also comes into play here. The affiants' selective recitation of facts and paucity of information relating to exigency contained in the warrant application indicate that the situation here is one where they relied on colleagues "ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.* As such, pursuant to guidance provided in *Leon*, the affiants' lack of objective reasonableness weighs against application of the good faith exception.

(Doc. 107 at 57-58.)

The Court did not, as the Government states, "conflate the purpose of the search warrant in its discussion regarding . . . 'omitted' facts with the protective sweep and search for the children that occurred prior to the search warrant." (Doc. 107 at 16.) Rather, the Court conducted the analysis appropriate to the facts, evidence, and Court findings which preceded consideration of the good faith exception, including matters of credibility, reasonableness of the officers' beliefs, and the conclusion that exigent circumstances did not justify the warrantless entry.

The Government's dissociation of the circumstances under which the warrant was obtained and the ability to rely on the good faith exception ignores the broad analysis relevant to the application of the exception. While the Government correctly states that "[t]he search warrant application and affidavit serve the purpose of advising the independent district justice of the facts sufficient to demonstrate that there is probable cause to believe that there is evidence of a crime located at the particular place subject to search" (Doc. 107 at 16 (citing *Ill. V. Gates*, 462 U.S. 213, 238 (1983)), whether evidence should be suppressed following a warrantless entry which violates the Fourth Amendment is a multi-

14

faceted question which is addressed at length in the Court's Memorandum Opinion. (Doc. 103 at 44-47, 50-52.) Thus, to the extent the Government's statement that "in this case, the only facts necessary for that purpose had to do with whether or not there was probable cause to believe there would be evidence of illegal drug distribution located at Gilliam's residence" (Doc. 107 at 16), implies that the circumstances, here the warrantless entry, giving rise to such a belief are not relevant to the good faith exception analysis, the Government is wrong. To find otherwise would be to condone what *Leon* warned against, that is, it would allow an affiant aware of the problematic nature of his observation of evidence which forms the basis of the warrant to provide a magistrate judge with selective sufficient information for the issuance of the warrant and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *Leon*, 468 U.S. at 923 n.24 (citing *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). The Court has concluded that the law does not condone such conduct, and the Government provides no basis alter that conclusion. While the Government may wish otherwise, the Third Circuit advised in *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002), that "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *Id.* at 437–38 (internal quotation omitted).

## IV. CONCLUSION

The Government has not shown an "error of law or fact in the Court's Memorandum Opinion that if uncorrected will result in manifest injustice" (Doc. 107 at 4). As discussed

15

above, the Government has not shown that the Court erred by failing to consider exigency as to adult individuals, that the Court erred in its credibility determination as to law enforcement officers, or that the Court erred in its determination regarding the good faith exception. Thus, the Government has provided no basis for the Court to reconsider its previous determination that Defendant Larry Gilliam's Motion to Suppress Physical Evidence ("Motion") (Doc. 36) was properly granted (Docs. 103, 104). With these findings, the Court will deny the Government's Motion for Reconsideration (Doc. 106). A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge